**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH JOHN CRISCI, ) | |
| ) | |
|      Petitioner, ) | 3:08-cv-00002-RCJ-VPC |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| WILLIAM DONAT, *et al.*, ) | |
| ) | |
|      Respondents. ) | |
| —————————————————/ | |

This action is a petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254.  This matter comes before the Court on the merits of the first amended petition.

**I. Background and Procedural History**

     **A.  Case #04-0649**

A criminal complaint was filed in the Sparks Township Justice Court on October 6, 2003, charging petitioner and two co-defendants with robbery with the use of a deadly weapon, burglary, and conspiracy to commit robbery with the use of a deadly weapon.  (Exhibit 124).[1]  The preliminary hearing was held on November 10, 2003, March 12, 2004, and March 15, 2004.  (Exhibit 125).

---

[1] The exhibits referenced in this order include those filed by defendants, Exhibits 1-115, at ECF Nos. #21-26, as well as those filed by petitioner, Exhibits 116-130, at ECF No. 41.

Petitioner was represented by Steven L. Sexton.  The case was bound over to the Second Judicial

District of Nevada.  (Exhibit 125).  An information was filed on March 17, 2004, and contained the

same charges as the criminal complaint.  (Exhibit 126).  Arraignment on the charges was held on

March 20, 2004, at which petitioner pleaded not guilty.  (Exhibit 123).  On May 6, 2004, petitioner

changed his plea from not guilty to guilty, entering a plea to Count I, robbery with the use of a deadly

weapon.  (Exhibit 123).  On September 16, 2004, a substitution of attorney was filed, with Robert H.

Broili substituting in place of Steven Sexton.  (Exhibit 128).  Attorney Broili moved for a

psychological examination of petitioner, and also moved to withdraw the guilty plea.  (Exhibit 129).

On February 24, 2005, petitioner was sentenced to 24 to 84 months with a consecutive term of 24 to

84 months, and credit for time served of 502 days.  (Exhibit 130).  Petitioner did not appeal the

conviction.

**B.  Case #03-2701**

An information charging petitioner with 9 counts of robbery with the use of a deadly weapon

and one count of conspiracy to commit robbery was filed in the Second Judicial District Court on

December 23, 2003.  On December 30, 2003, arraignment was continued for two weeks.  (Exhibit 1).

On January 13, 2004, a hearing was held and petitioner's attorney, Mr. Sexton, asked the

court to remand the matter back to the justice court.  Mr. Sexton represented to the court that

negotiations were pending.  The court denied the request.  (Exhibit 1, at 1/13/2004).  On January 29,

2004, the court remanded the case back to justice court for further proceedings.  The preliminary

hearing was set for April 14, 2004.  On April 15, 2004, petitioner's attorney filed a waiver of the

preliminary hearing.  (Exhibit 8).

On May 13, 2004, an arraignment on the second information was held, at which petitioner

changed his plea to guilty on Counts I through VII of the charges.  (Exhibit 10).  On September 16,

2004, Robert Broili substituted in as counsel for petitioner in place of Steven Sexton.  (Exhibit 16).

Broili immediately filed a motion to withdraw the plea.  (Exhibit 16).  On October 28, 2004, attorney

2

Broili sought a continuance on the hearing of the motion to withdraw plea, so that he could prepare a motion for psychiatric evaluation. (Exhibit 25). On November 11, 2004, Broili argued for a psychiatric evaluation at public expense, and the court denied that motion. (Exhibit 26). Broili arranged for two psychiatric evaluations of petitioner, but only one evaluation had been prepared. (Exhibit 29). A further continuance was obtained for hearing on the motion to withdraw plea. (*Id.*).

On January 4, 2005, a hearing was held at which the court found petitioner competent to stand trial. (Exhibit 30). A hearing was held on February 24, 2005. Counsel Broili withdrew his motion to withdraw the guilty plea and petitioner proceeded to sentencing. (Exhibit 34). Dr. Sally Skewis was called as an expert witness and testified to petitioner's mental status at the sentencing hearing. (Exhibit 34).

Petitioner was sentenced to the following: Count I, 48 to 156 months and a consecutive sentence of 48-156 months for the use of a deadly weapon; Count II, 24 to 48 months and a consecutive sentence of 24 to 48 months for the use of a deadly weapon; Count III, 24 to 48 months and a consecutive sentence of 24 to 48 months for the use of a deadly weapon; Count IV, 24 to 48 months and a consecutive sentence of 24 to 48 months for the use of a deadly weapon; Count V, 24 to 48 months and a consecutive sentence of 24 to 48 months for the use of a deadly weapon; Count VI, 36 to 156 months and a consecutive sentence of 36 to 156 months for the use of a deadly weapon; and Count VII 36 to 156 months and a consecutive sentence of 36 to 156 months for the use of a deadly weapon. All sentences were to run concurrent with each other and concurrent to the sentence in case #04-0649. (Exhibits 34, 35). Petitioner did not file a direct appeal.

**C. State Post-Conviction Proceedings**

Petitioner filed a post-conviction habeas petition in state district court on June 6, 2005. (Exhibit 38). On July 5, 2005, counsel was appointed to represent petitioner in his post-conviction proceedings. (Exhibit 43). Counsel filed a supplement to the petition on August 25, 2005. (Exhibit 46). The state district court issued an order denying the petition on November 9, 2005. (Exhibit 56).

1    The notice of appeal from the denial of the state habeas petition was filed on December 2,

2   2005.  (Exhibit 61).  Petitioner's counsel filed a fast track statement on January 3, 2006, raising one

3   issue: "Whether the district court erred in dismissing the petition absent an evidentiary hearing where

4   there was supporting witnesses and documentation showing trial counsel failed to defend appellant

5   under theories of insanity, duress, alibi and good character."  (Exhibit 121, at p. 5).  On January 9,

6   2006, respondents filed a Confession of Error/Request for Remand with the Nevada Supreme Court.

7   (Exhibit 122).  On February 24, 2006, the Nevada Supreme Court filed an order vacating judgment

8   and remanding.  (Exhibit 68).

9    On March 7, 2006, the state district court entered an order for an evidentiary hearing.

10   (Exhibit 69).  An evidentiary hearing was held on June 15, 2006, and continued to September 22,

11   2006.  (Exhibits 83 and 91).  On October 19, 2006, the state district court entered findings of fact,

12   conclusions of law, and order denying relief on the habeas petition.  (Exhibit 94).

13    A notice of appeal from the denial of the of the petition was filed on October 30, 2006, which

14   was docketed as Nevada Supreme Court appeal #48336.  (Exhibit 96).  On December 15, 2006, the

15   two appeals (#48336 and #48339) were consolidated for appeal.  (Exhibit 106).  A fast track

16   statement was filed in the consolidated cases on December 15, 2006, by petitioner's counsel.

17   (Exhibit 107).  The fast track statement raised the following issues:

18        1.  Whether the district court erred in finding trial counsel Sexton
         effective when encouraging Crisci to enter guilty pleas when he was
19        under the influence of inconsistent medications, drooling and
         slobbering, and "following his legal representative"?

20
         2.  Whether the district court erred in finding trial counsel Sexton
21        effective when he knew about Crisci's defenses of insanity, alibi, and
         good character, and insisted upon guilty pleas and trial cousel Broili
22        effective when he was hired to withdraw his guilty plea and proceeded
         with sentencing, despite knowing that Crisci had viable defenses of
23        insanity, duress, alibi, and good character?

24

25

26

4

1    (Exhibit 107, at p. 6).  A fast track response was filed on December 29, 2006.  (Exhibit 110).  The

2    Nevada Supreme Court filed an order of affirmance on February 8, 2007.  (Exhibit 111).  Remittitur

3    issued on March 6, 2007.  (Exhibit 114).

4         **D. Federal Proceedings**

5         Petitioner dispatched his federal habeas petition to this Court on November 19, 2007.  (ECF

6    No. 5).  Respondents moved to dismiss the petition.  (ECF No. 19).  On July 2, 2009, this Court

7    denied the motion to dismiss and appointed the Federal Public Defender to represent petitioner in

8    these proceedings.  (ECF No. 35).  Through counsel, petitioner's first amended petition was filed on

9    December 31, 2009.  (ECF No. 40).  The first amended petition contains the following claims:

10              Ground One: Crisci's guilty pleas were not entered knowingly,
                intelligently, or voluntarily in violation of his right to due process of
11              law under the Fifth and Fourteenth Amendments to the United States
                Constitution.
12
                Ground Two: Defense counsel was ineffective because he induced
13              Crisci to enter a plea that was not knowing, voluntary and intelligent.
                Because of this unprofessional error, Crisci is imprisoned in violation
14              of his right to the effective assistance of counsel under the Fifth and
                Fourteenth Amendments.
15
                Ground Three: Defense counsel was ineffective because he failed to
16              adequately investigate Crisci's case and prepare a defense, causing
                Crisci to accept a plea that he otherwise would not have accepted.
17              Because of this unprofessional error, Crisci is imprisoned in violation
                of his right to the effective assistance of counsel under the Fifth and
18              Fourteenth Amendments.

19              Ground Four: Replacement counsel failed to present Crisci's
                meritorious request to withdraw his plea to the court.  Because of this
20              unprofessional error, Crisci is imprisoned in violation of his right to
                the effective assistance of counsel under the Fifth, Sixth, and
21              Fourteenth Amendments.

22   (First Amended Petition, at ECF No. 40).  Petitioner's first amended petition was accompanied by

23   Exhibits 116-130.  (ECF No. 41).  On February 16, 2010, respondents moved to dismiss the first

24   amended petition.  (ECF No. 44).  On September 28, 2010, the Court entered an order granting in

25   part, and denying in part, the motion to dismiss.  (ECF No. 47).  Ground One of the first amended

26

petition was found to be unexhausted.  (*Id.*).  On November 8, 2010, petitioner filed a declaration

abandoning Ground One.  (ECF No. 51).  Respondents filed an answer on December 8, 2010.  (ECF

No. 52).  Petitioner's reply was filed, by his counsel, on January 3, 2011.  (ECF No. 53).  The Court

now considers the remaining grounds of the first amended petition.

## II.  Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

§ 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

Court's] precedent."  *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court

precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Discussion

### A. Ground Two

In Ground Two of the amended petition filed in this Court, petitioner alleges that: "Defense counsel was ineffective because he induced Crisci to enter a plea that was not knowing, voluntary and intelligent. Because of this unprofessional error, Crisci is imprisoned in violation of his right to the effective assistance of counsel under the Fifth and Fourteenth Amendments." (ECF No. 40, at p. 11). Petitioner asserts that attorney Steve Sexton "(a) failed to properly investigate the scope of his client's mental limitations and deficiencies, (b) failed to ensure that Crisci understood the terms of the plea and the nature of the plea agreement; and (c) failed to make necessary accommodations regarding Crisci's borderline intellectual functioning and mental illness to ensure that his plea would be valid." (ECF No. 40, at p. 11). Petitioner asserts that Sexton's participation in and inducement of an invalid plea constituted deficient performance and ineffective assistance of counsel that could not have been excused by any valid strategic or tactical reason. (*Id.*).

1       Under *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner must show, first, that

2  counsel's representation fell below an objective standard of reasonableness, based on prevailing

3  professional norms.  *Id.* at 688-90.  Second, the petitioner must demonstrate that the identified acts

4  or omissions of counsel prejudiced his defense.  He must establish "a reasonable probability that, but

5  for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

6  694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

7  *Id.*

8       The application of the *Strickland* test where ineffectiveness of counsel is alleged to invalidate

9  a plea has been defined as follows:

10          [T]he two-part *Strickland v. Washington* test applies to challenges to
             guilty pleas based on ineffective assistance of counsel.  In the context
11          of guilty pleas, the first half of the *Strickland v. Washington* test is
             nothing more than a restatement of the standard of attorney
12          competence already set forth in *Tollett v. Henderson, supra*, and
             *McMann v. Richardson, supra*.  The second, or "prejudice,"
13          requirement, on the other hand, focuses on whether counsel's
             constitutionally ineffective performance affected the outcome of the
14          plea process.  In other words, in order to satisfy the "prejudice"
             requirement, the defendant must show that there is a reasonable
15          probability that, but for counsel's errors, he would not have pleaded
             guilty and would have insisted on going to trial.
16
17  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  The modified *Strickland* prejudice standard in guilty plea

18  cases asks whether there is a probability that, but for counsel's alleged errors, defendant would not

19  have pleaded guilty, but would have insisted on going to trial.  *Langford v. Day*, 110 F.3d 1380,

20  1387 (9th Cir. 1997).

21       The state district court held an evidentiary hearing on the issue of whether counsel was

22  ineffective for advising petitioner to accept a guilty plea.  (Exhibit 91).  Based on the evidentiary

23  hearing, the state district court entered the following findings of fact:

24          3.  Sexton conducted a reasonably complete investigation of all the
             charges and available defenses, and after having done so, in
25          concluding that the State's case was overwhelming and that no viable
             defenses existed, advised Crisci to accept a plea bargain.
26

8

a.  The plea bargain provided for the following: Crisci would plead guilty to one county of robbery with the use of a deadly weapon as alleged in CR04-0649A, and plead to seven counts of robbery with the use of a deadly weapon in CR 03-2701A, and then testify in the trials of his co-offenders.  In exchange, the State agreed to recommend that all sentences would run concurrent to that imposed on Count I in CR03-2701A.

b.  Sexton's advice to accept the plea bargain was reasonable under prevailing professional norms.

c.  Crisci understood all aspects of the plea bargain and realized that accepting the plea bargain was in his best interest.  His testimony to the contrary is not credible.

d.  Crisci's decision to accept the plea bargain was not the result of threats, coercion or promises from Sexton.  Crisci's testimony to the contrary is not credible.

7.  Crisci appeared in district court on May 13, 2004 and entered his negotiated guilty pleas.

a.  Five days before the entry of the pleas, however, Crisci and Sexton went over the guilty plea memorandum.  Sexton testified credibly that, while Crisci had trouble reading, he read the entire contents of the guilty plea memorandum to Crisci verbatim.  Crisci's testimony to the contrary is not credible.

b.  Crisci's decision to sign the guilty plea memorandum was reached freely and voluntarily, and not the result of any threats or promises from Sexton.  Crisci's testimony to the contrary is not credible.

c.  Crisci understood the contents of the guilty plea memorandum.

d.  The court also finds that at no time did Sexton state or imply he would abandon his client if the plea bargain was refused or declined.  Crisci's testimony to the contrary is again not credible.

8.  Before the district judge accepted Crisci's guilty pleas, Crisci was personally addressed by the judge and thoroughly canvassed.

a.  Sexton testified credibly that, at not time, did he tell Crisci how to answer any of the district judge's questions.  Crisci's testimony to the contrary is not credible.

9

1

2

       b.  During the change of plea canvass, Crisci answered all of the court's questions truthfully.  Crisci confirmed this in the habeas proceeding, and the court finds that testimony to be credible.

3

4

5

       c.  To the extent that Jennifer Karle or her mother testified Crisci was "drooling," or "slobbering," before or when he entered his please, the court finds this testimony unworthy of belief.  Sexton testified credibly that he did not observe this sort of very unusual behavior and the district judge certainly did not see it.

6

7

(Exhibit 94, at pp. 2-5).  The Nevada Supreme Court, affirming the state district court's findings and

conclusions, rejected petitioner's arguments:

8

9

10

11

12

13

       The district court found that Crisci's pleas were knowing, voluntary, and intelligent, and that defense counsel was not ineffective under the standard set forth in <u>Strickland v. Washington</u>.  The district court's factual findings regarding the validity of the guilty plea and claims of ineffective assistance of counsel are entitled to deference when reviewed on appeal.  Crisci has not demonstrated that the district court's findings of fact are not supported by substantial evidence or are clearly wrong.  Moreover, Crisci has not demonstrated that the district court erred as a matter of law.

14

15

16

17

18

19

20

21

22

(Exhibit 111, at pp. 2-3) (footnotes omitted).  Both the state district court and the Nevada Supreme

Court cited and applied *Strickland v. Washington*, 466 U.S. 668 (1984), the correct federal standard

for evaluating ineffective assistance of counsel claims.  The state district court and the Nevada

Supreme Court found that petitioner's plea was knowing, voluntary, and intelligent.  The factual

findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to

meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the United States Supreme Court, or

that the ruling was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  Habeas relief is denied as to the entirety of Ground Two.

23

    **B.  Ground Three**

24

25

26

    Petitioner alleges: "Defense counsel [Steve Sexton] was ineffective because he failed to

adequately investigate Crisci's case and prepare a defense, causing Crisci to accept a plea that he

otherwise would not have accepted.  Because of this unprofessional error, Crisci is imprisoned in

10

1    violation of his right to the effective assistance of counsel under the Fifth and Fourteenth

2    Amendments."  (ECF No. 40, at p. 12).

3          The legal standard for ineffective assistance of counsel is discussed above.  When the alleged

4    error relates to counsel's failure to investigate a potential defense, the proper inquiry is "whether

5    discovery of the evidence would have led counsel to change his recommendation as to the plea."

6    *Lambert v. Blodgett*, 393 F.3d 943, 982 (9th Cir. 2004), citing *Hill v. Lockhart*, 474 U.S. 52, 59

7    (1985).

8          Based on the evidentiary hearing, the state district court made findings that counsel was not

9    ineffective for failing to adequately investigate petitioner's case and prepare a defense.  The state

10   district made these findings:

11                 4.  In his petition and other moving papers, Crisci alleged his
              participation in at least one of the armed robberies was the result of

12                 coercion by one of his co-offenders.

13                       a.  Sexton testified credibly that he investigated the possibility
                    that Crisci may have been coerced to participate in one or more

14                       of the charged armed robberies.

15                       b.  Sexton reasonably concluded that the evidence might
                    support an inference that Crisci was influenced by his co-

16                       offenders, but the influence or manipulation fell short of
                    coercion.

17

18                       c.  Sexton also testified credibly that Crisci never told him that
                    one of his co-offenders had pulled a gun and shot at him,

19                       hitting his pant leg and leaving a bullet hole.  Crisci's
                    testimony to the contrary, if any, is not credible.

20                       d.  Crisci failed to present any evidence, credible or otherwise,
                    establishing that he was coerced or had been shot by a co-

21                       offender.

22                       e.  The court finds that Sexton's alleged failure to present a
                    defense premised on coercion was not unreasonable under

23                       prevailing professional norms and was preceded by a
                    reasonably complete investigation.

24

25                       f.  Moreover, the court finds that Sexton's failure to present a coercion
                    defense had nothing to do with Crisci's decision to accept the plea
                    bargain and plead guilty.

26

5.  In his petition and other moving papers, Crisci alleged that he was insane when he committed the crimes.  Crisci presented no evidence proving or tending to prove he was insane at any relevant time.  Consequently, to the extent Crisci contends Sexton failed to investigate and present an insanity defense and that the omission was unreasonable under prevailing professional norms, the contention was neither proved nor shown to have played any role in Crisci's decision to accept the plea bargain and plead guilty.

6.  In his petition and other moving papers, Crisci alleged that he did not commit one or more of the crimes because he had an alibi: namely, that he was with his wife and children at a local casino eating dinner and/or gambling when one or more of the armed robberies occurred.

    a.  Sexton testified credibly that he considered the possibility that Crisci had an alibi defense, but, given Crisci's admissions to the police, discounted it.

        i.  Sexton testified credibly that at no time to Crisci's wife, Jennifer Karle, show him a receipt from the casino in question, which she claimed was a receipt for the dinner.  Ms. Karle's testimony to the contrary is not credible.

            aa.  Ms. Karle was, and remains, biased.

            bb.  Despite her categorical claim about the existence of the receipt, Ms. Karle failed to produce the receipt for the post-conviction hearing.  Accordingly, the court is very skeptical about whether a receipt ever existed.

            cc.  Crisci presented no other witnesses, besides Ms. Karle, who had ever seen the receipt or would substantiate the alleged alibi.

        ii.  Consequently, the court finds Sexton's failure to further investigate and present an alibi defense based on the existence of a receipt was not unreasonable under prevailing professional norms, nor was the error, if any, prejudicial.

    b.  Sexton testified credibly that Ms. Karle never approached him and asked him to acquire surveillance tapes from the casino, which, she claimed, would substantiate the alibi.  Ms. Karle's testimony to the contrary is not credible.  Moreover, Crisci failed to prove these surveillance tapes existed at any relevant time, and he failed to prove they recorded exculpatory

12

> information.  Consequently, the court finds that Sexton's
> failure to locate and present the tapes was not prejudicial.

(Exhibit 94, at pp. 2-4).

The Nevada Supreme Court, affirming the state district court's findings and conclusions, rejected petitioner's arguments.  (Exhibit 111, at pp. 2-3).  Both the state district court and the Nevada Supreme Court cited and applied *Strickland v. Washington*, 466 U.S. 668 (1984), the correct federal standard for evaluating ineffective assistance of counsel claims.  The state district court and the Nevada Supreme Court found that petitioner's plea was knowing, voluntary, and intelligent.  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court will deny habeas relief with respect to the entirety of Ground Three.

**C.  Ground Four**

Petitioner alleges: Replacement counsel [Robert Broili] failed to present Crisci's meritorious request to withdraw his plea to the court.  Because of this unprofessional error, Crisci is imprisoned in violation of his right to the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments."  (ECF No. 40, at p. 14).

As to the claims made in Ground Four, the state district court entered these findings of fact after the state evidentiary hearing:

> 9.  Following the entry of the pleas, the district judge set sentencing for June 29, 2004, but the sentencing hearing was postponed or otherwise continued several times while Sexton marshaled mitigating evidence, particularly a reconstruction of Crisci's mental health history.
>
> 10.  Meanwhile, the district judge entered an order discharging Sexton from further representation of Crisci.  Another local attorney, Robert Broili, had been hired and made his appearance as of September 2004.

13

a.  Broili testified credibly that he had been hired to file and litigate a motion to withdraw Crisci's guilty pleas.  Although Broili candidly admitted he would need to associate with a trial lawyer if a jury trial resulted from the motion litigation, the court finds that, owing to his training and experience, Broili was well qualified to represent Crisci in the motion hearing and at a sentencing hearing.

b.  The motion was filed by Broili on January 18, 2005, and alleged, based on two competency evaluations, that Crisci may have been incompetent to enter his pleas, owing to his use of prescribed medication.

c.  The hearing on Broili's motion was conducted on February 24, 2005.

11.  On February 24, 2005, Crisci's case was called.

a.  At the commencement of the hearing, Broili addressed the court and announced that, upon reflection, he and Crisci had come to the conclusion that Crisci would forgo the motion, re-affirm the plea bargain and proceed to sentencing using the psych evaluations as mitigating evidence.  Broili's revised strategy was reasonable under prevailing professional norms.

i.  Although Crisci claimed to have been incompetent when he pleaded guilty, he did not prove nor proffer any evidence proving he was in competent when he changed his pleas.

ii.  Crisci's decision to forgo the motion and proceed with sentencing was in his best interest.  Crisci's testimony to the contrary is not credible.

iii.  Broili testified credibly that, aside from Crisci's change of heart, he independently investigated the case and concluded that Crisci would be convicted, and without a sentencing agreement from the State, Crisci would face a more severe sentence than contemplated by the original plea bargain.  This assessment of the situation was correct.

iv.  In addition, Broili testified credibly that he was not given any reason to believe that Crisci's alibi, coercion, insanity or good character defenses were such as would succeed in a jury trial. Broili's assessment was reasonable under prevailing professional norms, and not shown to be prejudicial.

c.  Broili's advice to proceed with the revised strategy, even if unreasonable, was not prejudicial.

14

i.  As noted above, Crisci failed to establish he actually was incompetent to enter his pleas at the time of the change of plea proceeding.

ii.  In addition, Crisci's post-conviction testimony was not credible on key points, and could not be reconciled with his credible statement that he spoke truthfully when he changed his pleas.

iii.  These circumstances, standing alone, demonstrate Crisci's motion to withdraw the pleas enjoyed no reasonable probability of success.

12.  After the motion to withdraw the pleas was itself [withdrawn], Crisci's case proceeded to sentencing.

a.  Broili's decision to present expert testimony at the sentencing hearing documenting Crisci's mental health history and drug abuse was reasonable under prevailing professional norms.

b.  To the extent that Crisci alleged Broili was ineffective in failing to present additional mitigating evidence, he failed to prove the omission was unreasonable.  Moreover, since no credible evidence was presented at the post-conviction hearing that might have changed the sentencing outcome, the omission was not proved to have been prejudicial.

(Exhibit 94, at pp. 5-8).  The state district court made these conclusions of law following the evidentiary hearing:

1.  Crisci received effective assistance of counsel from both Sexton and Broili within the contemplation of *Strickland v. Washington*, 466 U.S. 688 (1984), *Hill v. Lockhart*, 474 U.S. 52 (1985) and their local progeny.

2.  Crisci's guilty pleas were entered knowingly, voluntarily and intelligently.

3.  The State did not destroy or otherwise fail to preserve exculpatory evidence.

(Exhibit 94, at pp. 8-9).  The Nevada Supreme Court, affirming the state district court's findings and conclusions, rejected petitioner's arguments.  (Exhibit 111, at pp. 2-3).  Both the state district court and the Nevada Supreme Court cited and applied *Strickland v. Washington*, 466 U.S. 668 (1984), the correct federal standard for evaluating ineffective assistance of counsel claims.  The state district court and the Nevada Supreme Court found that petitioner's plea was knowing, voluntary, and

15

intelligent.  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).

Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or

involved an unreasonable application of, clearly established federal law, as determined by the United

States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding.  Habeas relief is denied with respect to

the entirety of Ground Four.

**IV.  Certificate of Appealability**

In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

(9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In

order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

debatable among jurists of reason; that a court could resolve the issues differently; or that the

questions are adequate to deserve encouragement to proceed further. *Id.*  This Court has considered

the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a

certificate of appealability, and determines that none meet that standard.  The Court will therefore

deny petitioner a certificate of appealability.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that the First Amended Petition for a writ of habeas

corpus is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

**APPEALABILITY.**

16

1  **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

2  **ACCORDINGLY.**

3     Dated this 11th day of May, 2011.

4

5                                    UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

17